MORRIS GOLDMAN v. CENTRAL RAILROAD OF NEW JERSEY.

Argued June 2, 1909—Decided November 8, 1909.

Finding no testimony in this case from which it can be concluded as matter of law that the verdict is clearly against the weight of evidence, or that the verdict is clearly excessive, the rule to show cause is discharged.

On rule to show cause.

Before Justices SWAYZE, TRENCHARD and MINTURN.

For the plaintiff, *Samuel Kalisch* and *Chauncey G. Parker.*

For the defendant, *George Holmes* and *William D. Edwards.*

The opinion of the court was delivered by

MINTURN, J.  While attempting to board defendant's car, at the Ferry street station in Newark, the plaintiff was injured, as he claims, by the negligent starting of the train by defendant's servants.

The defendant contended that the plaintiff's injuries were the natural result of his contributory negligence, in attempting to board the train while it was in motion.

Upon this issue a previous trial resulted favorably to the plaintiff, but the verdict was set aside by this court upon the ground that the clear preponderance of the testimony did not support it.

Upon a second trial, the jury disagreed, while upon this trial a verdict for $6,000 was returned for the plaintiff, and that verdict is now here upon a rule to show cause, upon the argument of which it was contended, that the verdict is against the evidence and is excessive.

The plaintiff's version of the occurrence was corroborated by two other witnesses, one of whom, Adam Ohl, a machinist,

and an apparently disinterested and reliable witness, testified in answer to the inquiry:

"*Q.* What occurred when you got there, what did you see?

"*A.* Well, I went up to the Congress street entrance, the outside; I got within two steps of the top platform and I saw the train stand there, and my intention was to get that same train, and I saw Mr. Goldman get on this train while it was standing still; he had his two feet on the first step; and the next thing I knew the train gave a jerk, and I looked around and I saw Mr. Goldman losing his grip and being dragged in between the bridge and the car. I went then and notified the conductor, or I mean the ticket agent, in the depot. Then the train went right on; it didn't stop."

At the first trial this witness did not testify; and his testimony therefore introduces into the case *sub judice,* an element of corroboration which did not exist upon the previous rule to show cause. This witness is corroborated by Abraham Schaffer, a painter, who also saw the occurrence, and, while his testimony is attacked upon the ground that it was a physical impossibility for him to witness the accident, owing to intervening obstructions to the view, we have concluded that the credibility of his story is for the jury and not for us to determine.

To meet this posture of the case, defendant called the train crew and two other witnesses, whose testimony was directed to supporting the contention of defendant; and, while it is possible that a court to whom the entire testimony is submitted for review may be inclined to voice its approval of the defendant's contention under the testimony, nevertheless, we must be mindful of the fact that the limitation of our duty is to determine whether a verdict is so egregiously unjust that the jury in reaching it must, through the medium of passion, prejudice or corruption, have violated that fundamental rule of jurisprudence governing the conduct of juries, which requires that they alone shall be the arbiters of the facts, where there is a reasonable dispute upon the testimony; and, also, that their verdict may be influenced, not only by the number of witnesses, but also by the credibility of the witnesses, under

all the facts and circumstances, including their appearance and conduct at the trial, factors which are entirely absent upon argument before us at the bar of this court. *Bowell* v. *Public Service,* 48 *Vroom* 231; *Anders* v. *Knights of Honor,* 22 *Id.* 175, 179; *Merritt* v. *Harper,* 15 *Id.* 73; *Kulman* v. *Erie Railroad,* 36 *Id.* 241; 12 *Cyc.* 592, and cases; 2 *Rice Ev.* 788.

Nor can we say that this verdict is excessive, when we recall that the plaintiff was thirty-six years old, and had an earning capacity of $36 per week; that his leg was twice amputated, and that he is now crippled for life; that he has a tumor upon his hip, upon which another operation is possible; that his earning power has been impaired so that he is able to earn but $12 weekly, while his expenditures for treatment and for a wooden leg have exceeded $600, not to mention the pain and suffering he has undergone, compensation for which at the best is problematical.

In his comments upon this phase of judicial proceeding, Tidd remarks: "A new trial may be had for excessive damages, but in that case the damages ought not to be weighed in a nice balance, but must be such as appear at first blush to be outrageous, and indicate passion or partiality in the jury." 2 *Tidd Prac.* 909.

In pursuance of this rule, courts have exercised the prerogative of setting aside verdicts, only where the verdict is clearly or palpably wrong, because it is against the clear weight of the evidence, and can only be reconciled with a correct conception of justice, upon the theory that the jury were mistaken, or were influenced by passion, prejudice or corruption. 2 *Arch. Pr.* 253; *Hutchinson* v. *Coleman,* 2 *Hal.* 74; *Taylor* v. *Vanderveer,* 4 *Harr.* 22; *McEowen* v. *Lewis,* 2 *Dutcher* 451.

Upon the theory only, that this rule marks the limitation of judicial prerogative, can the conception commonly entertained of our dual system in the administration of justice be logically or consistently supported; instituted, as it was, says Blackstone (quoting the provisions of chapter 29 of *Magna Charta*), as a perpetual guarantee, "That no freeman shall be hurt in either his person or property, *nisi per legale judicium parium*

*suorum vel per legem terræ."* 3 *Com., ch.* 23; *Penns Case,* 6 *How. St. Tr.* 951.

Tested by this rule, we are unable to say that the verdict in this case is against the weight of the evidence, or that it is so excessive as to warrant us in concluding that it is the product of a vicious conception entertained by the jury of the respective rights of the parties to this action, and for that reason the rule to show cause must be discharged.